# Melissa Dunn Deposition Excerpts

EXHIBIT 3

1  Q. Okay.
2     MR. GAUNT: You were writing it in '06
3  probably.
4     THE WITNESS: No. I wrote it when we
5  were in December so...
6     MR. GAUNT: Okay.
7  Q. (By Mr. Harris) And that's a fair question.
8     I guess I probably ought to ask you with
9     regard to the document that's marked
10    Exhibit 37, was this just kind of a
11    progression thing?
12 A. Yes. And this isn't in our standard format
13    for investigative reports, either.
14 Q. All right. So part of it would be prepared
15    on a given date and then part of it was
16    prepared later? Is that how I understood
17    it?
18 A. Yes. I actually started this on the 23rd.
19 Q. Okay. And when you went to
20    Judge Ellsworth's office on the 22nd, was
21    anybody else present other than you,
22    Judge Ellsworth and Mr. Anderson?
23 A. No, that's all.
24 Q. And you narrate what Mr. Anderson reported
25    at that time; correct?

417-887-4110  ***  ALPHA REPORTING SERVICE  ***  866-991-7787
www.missouricourtreporters.com
Case 6:09-cv-03018-RED  Document 207-4  Filed 09/20/10  Page 2 of 8

```
 1  A.  Yes.
 2  Q.  Do you recall did you say anything during
 3      this meeting?  I don't see anything noted in
 4      here about any comments you may have made,
 5      but did you make any statements or say
 6      anything during the meeting on the 22nd?
 7  A.  If I would have asked anything, what he
 8      states here would have been the response to
 9      it.
10  Q.  Okay.  I guess I take that back.  It looks
11      like on the second page there is a paragraph
12      where it starts out you told Mr. Anderson --
13      you said that --
14  A.  Yes.
15  Q.  -- since it happened in Licking you thought
16      the Licking Police Department should be
17      involved?
18  A.  Yes.
19  Q.  What was your reasoning or thinking behind
20      that?  Explain that to me.
21  A.  Crime didn't occur within my jurisdiction.
22  Q.  So if something occurs within the city of
23      Licking it's not within the Texas County
24      Sheriff's Department's jurisdiction?
25  A.  It's primarily in the City of Licking's
```

417-887-4110  ***  ALPHA REPORTING SERVICE  ***  866-991-7787
www.missouricourtreporters.com
Case 6:09-cv-03018-RED   Document 207-3   Filed 09/20/10   Page 3 of 8

      jurisdiction.  If they ask for assistance, we'll be glad to help them.

Q.  All right.  And then at the bottom of that second page it talks about you make a note that you were at the prosecuting attorney's office on the 20th to drop off some paper work and you could overhear Mr. Anderson and Monica Daniel having a conversation.  Could you actually hear what they were discussing?

A.  Well, I could hear the conversation.  I don't know if I've got it word-for-word.  I could hear conversation.  I would say not or I would have put it in here.

Q.  Okay.  Then you state that later that evening Monica came to your office?

A.  Yes.

Q.  Do you recall what time that was?

A.  I'd say it'd be after five.

Q.  All right.  Are those normal work hours for you to be there after five?

A.  Yes.

Q.  And she reports this incident with Mr. Anderson coming to her house Saturday night slash Sunday morning.  And she reported to you that she let her answering

417-887-4110  ***  ALPHA REPORTING SERVICE  ***  866-991-7787
www.missouricourtreporters.com
Case 6:09-cv-03018-RED  Document 207-3  Filed 09/20/10  Page 4 of 8

```
 1        2230, which I'm not very good with military
 2        time.  Is that 10:30?
 3   A.   2330.
 4   Q.   Oh, I'm sorry.  You say 2330.
 5   A.   Well, Trooper Kinder dropped the prosecutor
 6        off at his car at 2230.
 7   Q.   That would be 11:30?
 8   A.   Yes.
 9   Q.   Then I think on the next paragraph you put
10        in -- do you recall did you talk to
11        Trooper Kinder on the 23rd?
12   A.   Yes.
13   Q.   And then I assume the next paragraph that
14        states on 12/27/06, that would have been
15        something you typed after whatever happened
16        on the 27th?
17   A.   Yes.
18   Q.   You talked to Mr. Anderson and you said that
19        since he'd taken the tape, the integrity of
20        it had been jeopardized.  Explain to me why
21        you felt that.
22   A.   Well, you don't turn over evidence to the
23        victim while you're investigating a crime.
24   Q.   Did you know whether or not that was a copy?
25   A.   The judge said he gave him the tape.
```

1  Q.  Okay.  But you didn't know whether or not it
2      was just a copy?
3  A.  Well, the judge had been supplied the tape
4      complying with the subpoena so I don't know
5      if it's the original tape or a copy that
6      person made before they handed it to the
7      judge to comply with the subpoena.  But the
8      tape that the judge was handed was handed to
9      the prosecutor.
10 Q.  Did you ever ask Ms. Williams when you were
11     talking with her if she had a copy of the
12     tape?
13 A.  No.
14 Q.  And I would assume on the 27th you didn't
15     know whether or not there were multiple
16     copies of the tape?
17 A.  Had no idea.
18 Q.  Did you have an understanding at this time
19     where the tape had come from?
20 A.  It was my understanding that I believe that
21     Ms. Daniel had brought the copy over to the
22     judge's office, but...
23 Q.  When you talked with Ms. Daniels on the 20th
24     did she indicate to you that she had had a
25     tape?

417-887-4110  ***  ALPHA REPORTING SERVICE  ***  866-991-7787
www.missouricourtreporters.com
Case 6:09-cv-03018-RED   Document 207-3   Filed 09/20/10   Page 6 of 8

1         MR. GAUNT: I'm sorry. I missed the
2 answer.
3         THE WITNESS: No.
4         MR. GAUNT: Thank you.
5 A. Nothing specific.
6 Q. (By Mr. Harris) Well, let me just ask you:
7    Did you believe Mr. Anderson?
8 A. No. I thought it was a line of horseshit.
9 Q. And why is it you thought it was a line of
10    horseshit? No offense, but --
11 A. I think he got drunk and he did something he
12    probably shouldn't have done and he made up
13    this big story. He tells me there's
14    supposed to be a videotape of him at the bar
15    but he won't tell me who told him that so I
16    can investigate it. He tells me there's a
17    doctor who can prove that he was -- may be
18    able to prove he was drugged, but did he
19    give me the tape and let me talk to the
20    doctor? He handles it all himself, which as
21    a prosecutor he knows is totally
22    inappropriate. How many different ways can
23    he do that so it looks wrong? The judge
24    issues a subpoena, after he signs it the
25    subpoena's supposed to be sent down for

417-887-4110 *** ALPHA REPORTING SERVICE *** 866-991-7787
www.missouricourtreporters.com
Case 6:09-cv-03018-RED   Document 207-3   Filed 09/20/10   Page 7 of 8

```
 1       service.  The judge doesn't serve a subpoena
 2       himself and then collect the evidence
 3       himself.
 4    Q. After Mr. Anderson explained to you his
 5       reasoning with regard to why he didn't want
 6       the City of Licking or the highway patrol
 7       involved, did you think that was a
 8       legitimate --
 9    A. I don't know.  He wouldn't give me enough
10       information.
11    Q. Do you know why Ms. Daniel came to see you
12       on the evening of the 20th, what was her
13       purpose of her visit to you?
14    A. I'd seen her upset there in her office a few
15       hours before that.
16    Q. When she came to you to see you on the 20th,
17       did she ask you to do anything?
18    A. No.
19    Q. Did she explain to you why she was there
20       telling you about it?
21    A. Well, I think I'd asked her if she was all
22       right when she came out there and she said,
23       "I'll talk to you later."
24    Q. So you took it that she wasn't visiting you
25       in an official capacity when she came to see
```

417-887-4110  ***  ALPHA REPORTING SERVICE  ***  866-991-7787
www.missouricourtreporters.com
Case 6:09-cv-03018-RED   Document 207-3   Filed 09/20/10   Page 8 of 8