Melissa Dunn Deposition Exhibit #37

EXHIBIT
17

Criminal Investigation
Lt. Melissa Dunn
Texas County Sheriff's Department

Michael R Anderson          04-09-52          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

Monica S Daniel             02-15-72          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

On 12-22-05 I was summoned to Judge Ellsworth's office to meet with the Judge and Prosecuting Attorney Michael Anderson.

Mr. Anderson explained to the Judge and I that on the previous weekend he felt that he had been assaulted and wished the Sheriff's Department to investigate.

Mr. Anderson further explained that on 12-17-05 he had gone to his office during the evening hours to work. A short time later he made contact with Trooper Jeff Kinder. It was decided that Mr. Anderson would patrol with Trooper Kinder. While riding with the trooper Mr. Anderson admits to drinking whiskey from a flask he had in his pocket. He states that he only drank from the flask on two occasions while with the trooper. At about 2230 or 0000 hours he exited the patrol car at his office. He then got into his private vehicle and drove to Licking.

Mr. Anderson states that he wanted to have a drink so he went to the Outback Bar & Grill. After arriving at the bar he met several people who knew him and had small talk with these people. One girl in particular he had met on a previous occasion. While speaking to her he spoke to a tall man that was standing next to her. Mr. Anderson asked them if they had set a date yet, thinking that this man was her boyfriend that he had met on a previous occasion, the woman gave him a strange look and then told him that the man was not her boyfriend. The man then offered to buy Mr. Anderson a beer. Mr. Anderson accepted and was handed a bottle of beer. Mr. Anderson remembers taking a few drinks from the beer and the rest of the evening was like "snapshots". Mr. Anderson believes that someone may have put an illegal substance in his drink.

Mr. Anderson states that he has spoken to a doctor and explained his actions from the evening. The doctor told him that he could have possible been under the influence of "GHB", a date rape drug. I asked Mr. Anderson to explain what happened after he got the beer.

Mr. Anderson states that he remembers hearing or thinking to himself, "finish the beer", he then remembers being in his vehicle to leave the bar and hearing or thinking to him self, "look out, you almost hit that car", he remembers driving to

EXHIBIT
Dunn 31
Lindsay Benl, CCR
Alpha Reporting Service

Monica Daniel's home located in Licking and then calling her on his cell phone. While at her he knocked on the door and a window. No one would answer the door so he called back and left a message on her machine. Mr. Anderson believes he was at her home for 5 – 10 minutes.

Mr. Anderson remembers that while he was driving home he had to cover one eye because he was seeing 3 yellow lines. He does not remember driving through Houston, arriving at his home or entering his home.

When he woke the next morning he looked at his phone and saw that he had called Monica 5 times. He then went outside and checked his vehicle to make sure he had not hit anything the previous night.

Mr. Anderson stated that the Doctor he spoke to told him that he could possibly tell if Mr. Anderson was under the influence of a drug if he could hear or see a tape from that evening. Mr. Anderson then stated that someone had told him that the owner of the bar had a video of him acting stupid at the bar and that he believed the video may contain evidence of someone putting something in his drink. He further stated that he would like me to get a copy of the answering machine tape from Monica and the videotape from the bar. I advised Mr. Anderson that even if I could see someone put something in his drink I had no way of proving what it was. Mr. Anderson stated that he still felt that an investigation should be conducted. Mr. Anderson would not tell me who had seen this video tape.

I told Mr. Anderson that I felt that since this happened in Licking, the Licking Police Department should be involved. Mr. Anderson stated that he did not want the Licking Police or the Highway Patrol involved. I asked why and was told that he didn't want them involved. I then asked if he thought they were involved in the drug activity and he stated they were not. I again asked why they should not be involved.

Mr. Anderson then told me that a few weeks ago he and his secretary Monica had argued over her personal relationships. He had been told by several people that they did not approve of her personal life and that it would cause him trouble if he did not fire her. He ultimately fired Monica and then a short time later a mutual friend had them meet and they worked it out for her to come back to work. Mr. Anderson led me to believe that Monica may have been seeing an officer or trooper who was married so he did not want them involved in the investigation. I agreed to look into the matter for Mr. Anderson.

NOTE- On 12-20-05 I was at the Prosecuting Attorney's office to drop off paperwork and could overhear Mr. Anderson and Monica Daniel having a conversation in his office. The door to his office was open. After Monica exited his office it was very apparent that she was upset and had been crying. Later that evening Monica came to my office and told me that Mr. Anderson had been to

her house on Saturday night/Sunday morning. Monica stated that Mr. Anderson had called her home after midnight, when she saw it was him she let the machine get it. Mr. Anderson said he was coming over he had something to tell her.

At the time of this call another county employee, Millie Williams, was at Monica's home, spending the night. Monica states that Mr. Anderson pulled up into the drive and knocked on the door. They did not answer the door and pretended like no one was home. Mr. Anderson continued to knock on the door and then walked to the back of the home and knocked on the back door. After getting no answer he walked back to the front of the home and tried turning the door knob. Mr. Anderson went back to his vehicle and used his cell phone to call Monica's home several times. The answering machine picked and recorded these calls.

On the morning of 12-23-06 I informed the Sheriff of the request I had received. He and I went to speak to Judge Ellsworth. At this meeting the Judge told us that it would be best to leave this alone.

Later in the afternoon I was informed that the Prosecutor had taken an investigative subpoena to the judge requesting the answering tape recording from Monica Daniel. The judge signed the subpoena and had received the tape from Monica. I went to the Judge's office and asked for the tape. I was told that the tape had been turned over to the Prosecuting Attorney. I then asked Millie Williams if she would give me a written statement of the events from Saturday night. Ms. Williams agreed and provided me with one.

I contacted Trooper Jeff Kinder and asked if the Prosecuting Attorney had ridden with him on Saturday evening. Trooper Kinder said that he had. I asked Trooper Kinder if he noticed the Prosecutor drinking anything. Trooper Kinder said that he could smell alcohol on the Prosecutor but did not think he was intoxicated. Trooper Kinder dropped the Prosecutor off at his car around 2330 hrs.

On 12-27-06 I spoke to Mr. Anderson and told him that since he had taken the tape the integrity of it had been jeopardized and I did not feel comfortable being involved in this investigation. I also told him that if he needed anything else done he would need to contact the Highway Patrol.

On 05-23-06 Millie Williams summoned me to the Houston Park to meet with her. Upon my arrival she directed my attention to two cigarette butts that were laying in the bed of her Ford Ranger pick up.

One cigarette looked like it had been partially smoked and then came to rest in the bed. The 2nd cigarette looked like it had been lit and then came to rest in the bed near a roll of carpet. Both cigarettes had ash left on them. These cigarettes were photographed and seized. It appeared that the cigarettes were Marlboro "reds". Millie stated that she thought the cigarettes had been lit then thrown in her truck as an act of retaliation from Mike Anderson. I explained to Millie that even if

they were his cigarettes I could not prove that Mr. Anderson had done this act intentionally.

Millie parks her truck in the employee parking lot of the courthouse near the rear door of the courthouse. Anyone entering or leaving the courthouse could have flipped a cigarette from the doorway and it accidentally landed in her truck. I further explained to Millie that I could send the cigarettes off for DNA but even if I found that they belonged to Mr. Anderson I could not prove intent.

I informed Millie that I would retain the cigarettes and the photographs.

The next day I was summoned to Judge Ellsworth's office where I met with Millie, Marcie Mosley and Judge Ellsworth. At that time Millie informed Judge Ellsworth of the cigarettes in her truck. The judge asked if I could prove the cigarettes were Mr. Anderson's or prove he put them there on purpose and I told him I could not. I told the judge that I would not be doing anything further on this matter unless instructed to.