1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

MONICA DANIEL HUTCHISON,        )
                                )
            Plaintiff,          )
                                )
                                )
vs.                             ) Case No. 09-3018-CV-S-RED
                                )
TEXAS COUNTY, MISSOURI; MICHAEL )
R. ANDERSON, TEXAS COUNTY       )
PROSECUTING ATTORNEY; and       )
MICHAEL R. ANDERSON,            )
Individually,                   )
                                ) June 16, 2010
            Defendants.         ) St. Louis, Missouri


VIDEOTAPED DEPOSITION OF HAROLD EMDE

a Witness, produced, sworn and examined on the 16th day of

June, 2010, between the hours of 8 a.m. and 5 p.m. of that

day, at the EEOC - St. Louis District Office - 1222 Spruce

Street, City of St. Louis, before

JOANN RENEE RICHARDSON, CCR
Certified Court Reporter
20051 State Route B
St. James, Missouri 65559

in the above-entitled cause, pursuant to Notice to Take

Video Deposition, on the part of the Plaintiff.

## Page 62

1 your earlier review of the file; correct?
2   A. I did not, but there may have been one of
3 these persons that filed a separate charge of
4 discrimination. I don't remember for sure.
5   Q. All right.
6   A. Had that been the case, I may have
7 interviewed them, but not in connection with this.
8   Q. You didn't interview them in connection
9 with Ms. Daniel's complaint?
10   A. No, that I can recall.
11   Q. Then on Page 10, you again asked about,
12 "Did any employee allege that they were subjected to
13 a sexually hostile work environment by Ms. Daniel?"
14 You never talked to any of the employees in the Texas
15 County Prosecutor's Office during your investigation
16 of this matter, did you?
17   A. I spoke to Ms. Wheeler. I don't recall --
18 not Wheeler, Mildred, whatever her name was. I don't
19 recall where she worked.
20   Q. I'll submit to you that Ms. Wheeler was one
21 of the clerks for Judge Ellsworth in the Associate
22 Division of the Circuit Court of Texas County.
23 Assuming that to be true, you didn't talk to any of
24 the employees?
25       MR. STEELMAN: Objection, that

## Page 63

1 misstates that Christina -- you were talking about
2 Wheeler; right?
3       MR. HARRIS: I'm sorry, did I screw up
4 the question?
5       MR. STEELMAN: I think you did.
6       MR. HARRIS: I'm sorry, let me start
7 over.
8 BY MR. HARRIS:
9   Q. Assuming that Mildred Williams is one of
10 the clerks to the Associate Division of the Circuit
11 Court of Texas County, you wouldn't have talked to
12 anyone who worked in the prosecuting attorney's
13 office?
14       MR. STEELMAN: Other than Mr.
15 Anderson?
16 BY MR. HARRIS:
17   Q. Other than Mr. Anderson.
18   A. I don't recall unless I placed the call and
19 someone answered and I asked to speak to Mr.
20 Anderson.
21   Q. But as far as actually interviewing anybody
22 about what went on in the office, you never did that?
23   A. No.
24   Q. Am I correct, then, the only three people
25 you talked to about Ms. Daniel's complaint, her

## Page 64

1 alleged sexual harassment, are Ms. Daniel, Mr.
2 Anderson, and Mildred Williams?
3   A. Yes.
4   Q. Now, Mr. Steelman asked you several
5 questions about this attorney general's
6 investigation. You were informed by Mr. Anderson
7 that he had made the attorney general aware of
8 certain things; correct?
9   A. Correct.
10   Q. But you never contacted anybody from the
11 attorney general's office?
12   A. No, I didn't.
13   Q. And then with regard -- back to Exhibit 43,
14 if I can find the page here, on the fifth page you
15 asked -- in your interview of Mr. Anderson, you asked
16 him about the allegation about him talking to
17 Corporal Jeff Kinder about asking Ms. Daniel to come
18 back to work; is that correct?
19   A. That's correct.
20   Q. You never talked to Corporal Kinder,
21 either, did you?
22   A. I did not.
23   Q. Now, as part of your job, you referred this
24 on to the Department of Justice; correct?
25   A. Yes. Well, I requested that it be sent

## Page 65

1 there through the regional attorney.
2   Q. And is it your understanding that it was
3 sent to the Department of Justice?
4   A. Yes.
5   Q. And you drafted the letters to the
6 Department of Justice -- or your last log note of
7 9/5/07, it says at the end, "And DOJ letters"?
8   A. Yes.
9   Q. So that's the letter that you drafted to
10 the Department of Justice?
11   A. It's sort of an electronic letter that
12 comes out of our computer system where we just type
13 in the address.
14   Q. Are you aware that the Department of
15 Justice, in this case, chose not to proceed with this
16 matter?
17   A. I was aware of that, yes.
18   Q. But as far as why they chose not to
19 proceed, you don't know?
20   A. No, I don't.
21   Q. And as to the extent of their
22 investigation, you don't know how many people they
23 talked to or interviewed?
24   A. No, I don't.
25   Q. I'll just mark here as Exhibit 46 a letter