IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

MONICA DANIEL HUTCHISON,           )
                                   )
            Plaintiff,             )
                                   )
vs.                                ) Case No. 09-3018-CV-S-RED
                                   )
TEXAS COUNTY, MISSOURI; MICHAEL    )
R. ANDERSON, TEXAS COUNTY          )
PROSECUTING ATTORNEY; and          )
MICHAEL R. ANDERSON,               )
Individually,                      )
                                   ) June 29, 2010
            Defendants.            ) Houston, Missouri

VIDEOTAPED DEPOSITION OF BRAD EIDSON

a Witness, produced, sworn and examined on the 29th day of

June, 2010, between the hours of 8 a.m. and 5 p.m. of that

day, 112 East Main Street, City of Houston, County of Texas,

before

JOANN RENEE RICHARDSON, CCR
Certified Court Reporter
20051 State Route B
St. James, Missouri 65559

in the above-entitled cause, pursuant to Notice to Take

Video Deposition, on the part of the Plaintiff.

Joann Renee Richardson

*    573-699-4110    *    St. James, Mis

Page 73

1   Q. Okay. That's good. And he did not indicate
2   to you, up to that time, any concern with her sex
3   life or partners; is that correct?
4   A. I don't recall him saying anything.
5   Q. Okay. And would this have been within a
6   week of December 18th? Do you have any idea?
7   A. I do not recall.
8   Q. Okay. Now, after that conversation that you
9   had with Mr. Anderson, which led to you going and
10  asking Mr. Warlow for the tape that night, has Mr.
11  Anderson indicated to you since then any
12  dissatisfaction with Monica Daniel Hutchison as an
13  employee?
14  A. I don't recall one, no.
15  Q. Okay. Now, you talked about gossip for a
16  second, I think, in talking about -- and I may have
17  this wrong -- in regard to one of their two
18  questions. Now, after the lawsuit was filed, which
19  is Exhibit 4, and you've talked about gossip, was it
20  gossip about Monica Daniel Hutchison or Millie
21  Williams or both that you had heard?
22          MR. FRANKLIN: I'm going to object to
23  foundation because I'm not sure which type of gossip
24  we're talking about.
25          MR. STEELMAN: Well, see that's the

Page 74

1   reason for these questions. I think the word gossip
2   was Mr. Eidson's word.
3           MR. FRANKLIN: I'm more specific as to
4   the subject matter of the gossip, because as I
5   understand his testimony, there's gossip on several
6   different subject matters.
7           MR. STEELMAN: Okay. That's fair. We
8   need to ask that, too.
9   BY MR. STEELMAN:
10  Q. But on this question right now, I'm just
11  asking, was the gossip that you have testified to
12  pertaining to Monica Daniel Hutchison or to Mildred
13  Williams or to both of them?
14  A. To both.
15  Q. Okay. And was that gossip that you have
16  heard or that you recall flattering to Monica Daniel
17  Hutchison or Mildred Williams, or was it negative
18  with regards to their character?
19  A. I don't think it was a reference to their
20  character. My recollection is, it was a reference to
21  their acts. And, you know, I guess anyone could
22  characterize that however you wanted.
23  Q. Okay. That's fair. Is the gossip that you
24  heard with regard to Monica Daniel, would that, in
25  your opinion, be harmful to her reputation in the

Page 75

1   community?
2   A. Having affairs with married men, to me,
3   would be detrimental.
4   Q. Anything else that you -- gossip, because
5   you said you heard some gossip with regards to doing
6   favors for friends in the criminal justice system; do
7   you recall that?
8   A. Yes.
9   Q. And, again, was that gossip that you heard
10  with regard to Monica Daniel Hutchison -- and you
11  said you couldn't tell whether it was to one or both
12  of them; is that right?
13  A. That's correct.
14  Q. Okay. Was that -- would you say that
15  gossip, then, was harmful to Monica Daniel
16  Hutchison's and Mildred Williams' reputations in the
17  community?
18          MR. HARRIS: I object. I think it
19  lacks foundation. I think you can ask him about with
20  regard to him, but I don't think he can testify for
21  the entirety of Texas County or Houston or Licking or
22  wherever it is.
23  BY MR. STEELMAN:
24  A. The response to your question, if she was
25  doing favors for her friends which would involve

Page 76

1   removing or not filing the reports or statements of
2   witnesses, then, yes, I would think that would hurt
3   her reputation. It would with me.
4   Q. And Mildred Williams; correct?
5   A. Yes.
6   Q. Okay. Now, did you hear any other gossip
7   after the filing of the lawsuit, which is Exhibit 4,
8   that was negative or harmful to your way of thinking
9   with regards to Monica Daniel or Mildred Williams?
10  A. I would have heard gossip and most of that
11  would have been at or about the time. You
12  understand, it was four years ago.
13  Q. Okay. Of the filing of the lawsuit?
14  A. Yes.
15  Q. I'm sorry, I just wanted to clear that up.
16  A. I assume that was four years ago. In '06
17  sometime.
18  Q. Okay. So is it fair to say that the filing
19  of the lawsuit got people talking?
20  A. I think that would be fair.
21  Q. And it wasn't people talking favorably about
22  Monica Daniel or Mildred Williams; is that correct?
23  A. I wouldn't say favorably or disfavorably.
24  To my recollection, just about the fact the lawsuit
25  had been filed, almost like a joke. So I don't know