## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | |
|---|---|
| **MONICA DANIEL HUTCHISON,** | ) |
| **Plaintiff,** | ) ) ) |
| vs. | ) Case No. 09-3018-CV-S-RED |
| **TEXAS COUNTY, MISSOURI,** *et al*, | ) ) ) |
| **Defendants.** | ) |

## ORDER

Before the Court is Defendant Anderson's Motion for Summary Judgment (Doc. 194) filed by counsel for Defendant Michael Anderson ("Anderson"), whereby he seeks an entry of summary judgment in his favor for all claims asserted against him in his individual capacity.

## FACTS[1]

Plaintiff Monica Hutchison ("Hutchison") began working for Anderson in January 2001, at Anderson's private law practice, where she alleges she was subjected to inappropriate comments and touching while working for Anderson at the law firm.

Anderson was elected as the Texas County Prosecutor in Texas County, Missouri and Hutchison began working for Anderson at the Texas County Prosecutor's Office ("Office") in January 2003. Anderson continued making what Hutchison alleges were inappropriate comments. In response to one comment, Hutchison told Anderson to stop, and he said something to the effect of "come on, let me flirt with you." (Hutchison depo. p. 62 ln. 25, p. 63 ln. 1). Anderson also went to Hutchison's home unannounced and she pretended she was not home. Anderson would also,

---

[1] The Court accepts the following rendition of facts as those viewed in the light most favorably to Plaintiff for purposes of this Motion; however, nothing in this Order should be taken to state any fact as proven or true.

infrequently, tease Hutchison about the age of the man she was dating because she was older than the man.

Hutchison also complains of Anderson's conduct at two different work-related conferences attended by the Office employees. At one conference, Anderson offered Hutchison a key to his room which he said was in case she needed something, and she found this odd. At another conference during an evening while a few employees were at a bar, a man approached Hutchison, spoke with and danced with her. Anderson appeared upset by the fact that another man was talking to Hutchison and when Hutchison and Anderson discussed this, Anderson became angry and threw his glass against a wall. Sometime after the second conference, Anderson called Hutchison's house asking about a work file. However, this call was extremely late and occurred over the weekend, and Hutchison states that Anderson had already asked her about the file on an earlier occasion.

After all of these events transpired, Anderson called Hutchison into his office on December 1, 2005, informed her he believed she was gathering information to file a sexual harassment suit against him and saying negative comments about him publicly, and forced her to resign or be terminated. Hutchison testified that she was not gathering information to file a lawsuit.

Hutchison went back to work at the Office on December 12, 2005, after she was asked to return. However, on December 18, 2005, at 1:20 a.m., Anderson called Hutchison and left a voicemail indicating he was coming over, which prompted Hutchison to turn off all the lights at her house. When Anderson appeared at 1:30 a.m., he knocked on her front door several times and called Hutchison's phone. When she did not answer, Anderson knocked on the door harder, opened the screen door on the front door, hit on the door, leaned against it and said "save me, save me." (Hutchison depo. p. 168 ln. 24-25). He went back to his car, called her again, and then went back

to the front door and began beating on the door to the point Hutchison became afraid the door would come off. Anderson then went around to the carport door and beat on it, went back to the front door and jiggled the door handle. Anderson then began walking away, and while doing so, said "ignore me, you fucking bitch." (Hutchison Depo. p. 170 ln. 4-5). Hutchison was scared during this encounter, and believed Anderson was angry and intoxicated. Mildred Williams ("Williams"), one of Hutchison's friends, was at the house during this encounter. Hutchison called the Licking Police Department, and when a police car drove by, Anderson left Hutchison's house. Hutchison made a copy of Anderson's voicemails on a tape.

Hutchison returned to work on Tuesday, December 20, 2005. On December 20, Anderson wrote and gave Hutchison a note in Court that said the name 'Haywood Jablome' for Hutchison to call out as a witness, which embarrassed Hutchison. During the same week, Anderson also began telling Hutchison to turn over the tape containing the voicemails, so that it could be destroyed. When she did not comply, he obtained a subpoena directing her to produce "for copying, any voice recording, audio or otherwise and any telephone answering machine recordings of Michael Anderson taken at [Hutchison's] residence on December 18, 2005." (Subpoena). Hutchison turned over a copy of the tape. Later Hutchison resigned from her position at the Office.

## STANDARD

On a motion for summary judgment, the court must view the record in a light most favorably to the nonmoving party. *Taylor v. St. Louis Cnty. Bd. of Election Commissioners*, - - - F.3d - - - -, No. 09-3714, 2010 WL 4273252, at *1 (8th Cir. Nov. 1, 2010). Summary judgment is appropriate where "there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id*.

3

## DISCUSSION

### § 1983 claims

The Court previously dismissed Hutchison's 42 U.S.C § 1983 claim for violation of her Fourth Amendment Rights. *See* Order (Doc. 118). Now Anderson seeks an entry of summary judgment on Hutchison's remaining § 1983 claims, which are for 1) a hostile work environment, 2) First Amendment Retaliation, and 3) Malicious Prosecution. For all § 1983 claims the plaintiff " 'must show that the alleged deprivation was committed by a person acting under color of state law.' " *Cook v. City of Bella Villa*, 582 F.3d 840, 848-49 (8th Cir. 2009) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988).

1. Hostile Work Environment based on sexual harassment

A § 1983 claim concerning a hostile work environment based on sexual harassment is analyzed under the same test utilized under the Civil Rights Act of 1964 ("Title VII"). *Weger v. City of Ladue*, 500 F.3d 710, 717 (8th Cir. 2007). To state a claim for a hostile work environment, Hutchison must show

> 1) she was a member of a protected group; 2) the occurrence of unwelcome harassment, 3) a causal nexus between the harassment and her membership in the protected group; 4) the harassment affected a term, condition, or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take prompt and effective remedial action.

*Jenkins v. Winter*, 540 F.3d 742, 748 (8th Cir. 2008).

Anderson seeks to limit his actions the Court may consider when evaluating the merits of Hutchison's claim. Hutchison first asserted her § 1983 claims in her Second Amended Complaint (Doc. 53), filed on October 8, 2009, although she asserted a hostile work environment claim under Title VII in her original Complaint (Doc. 1), filed on January 21, 2009. Anderson argues that the §

4

1983 claims should not relate back to the date of the original Complaint for purposes of applying the five-year statute of limitations applicable to § 1983 claims. *Sulik v. Taney Cnty. Missouri*, 393 F.3d 765, 767 (8th Cir. 2005). Hutchison argues the Court should consider conduct that occurred outside the statute of limitations under a continuing violation theory.

Fed. R. Civ. P. 15 allows amendments to pleadings to relate back to the date of the original pleading. Anderson does not argue the relation back doctrine is improper under Rule 15(B), which applies to newly asserted claims that arise "out of the conduct, transaction, or occurrence set out ... in the original pleading." He argues the Court should not allow the new claims to relate back, pursuant to Rule 15(C), which allows an amendment to relate back to the original pleading when a claim is asserted against a different party, as long as the defendant received timely notice, will not be prejudiced by the amendment and knew or should have known about the claim absent the plaintiff's mistake.

Anderson has received timely notice of this action, in his individual and official capacity. Many claims against Anderson in his individual capacity center around the conduct that also serves as the basis for Hutchison's § 1983 hostile work environment claim. Thus, the Court will allow Hutchison's § 1983 claims to relate back to the date the original Complaint was filed, on January 21, 2009. It is also worth noting that even if the Court declined to apply the relation back doctrine, any conduct that occurred outside the statute of limitations would be admissible as "background to later discriminatory acts." *Kline v. City of Kansas City, Fire Dep't.*, 175 F.3d 660, 665 (8th Cir. 1999).

Aside from the application of Rule 15, the Court also finds Plaintiff's continuation violation argument persuasive. The continuing violation theory has been applied by the Eighth Circuit to Title VII employment discrimination cases and allows courts to consider actions that occurred outside of

the statute of limitations for filing a complaint with the Equal Employment Opportunity Commission ("EEOC"). *Rorie v. United Parcel Serv., Inc.*, 151 F.3d 757, 761 (8th Cir. 1998). *See Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1303 (8th Cir. 1997) ("[W]hen a plaintiff challenges an *ongoing pattern or practice of discrimination* rather than one isolated instance, the alleged violation may be deemed continuing."). Anderson's sole objection to the application of the continuing violation theory is that no Eighth Circuit opinion has applied the doctrine in the context of a § 1983 action; however, case law reveals that many other circuits have so applied the doctrine. *See Green v. Los Angeles Cnty. Superintendent of Sch.*, 883 F.2d 1472, 1480 (9th Cir. 1989); *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991); *Muniz-Cabrero v. Ruiz*, 23 F.3d 607, 610 (1st Cir. 1994); *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006); *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). Because Hutchison's § 1983 claim for hostile work environment involves actions clearly within the five-year statute of limitations, the Court finds the continuing violation theory should apply.

Anderson next seeks to exclude certain conduct from the Court's consideration by arguing that multiple actions alleged to be harassing are not actionable because Anderson was not acting under color of state law. First Anderson argues that all incidents which occurred at his private practice are not actionable under § 1983 because Anderson was a private attorney at a private law firm. Hutchison does not dispute Anderson's claim. The Court agrees that Anderson was not acting under color of state law before he was elected Texas County Prosecutor and thus, conduct occurring during his private practice is not actionable, but provides background for later discriminatory acts.

Anderson also argues that he was not acting under color of state law when he was alleged to have engaged in harassing conduct outside of work. Anderson cites to authority for the

6

proposition that actions undertaken in a person's individual capacity are not considered under color of law. *See Roe v. Humke*, 128 F.3d 1213, 1216 (8th Cir. 1997). However, he cites to no authority holding that conduct by a *supervisor* who harasses an employee outside of work is not actionable harm. In essence, Anderson was Hutchison's supervisor twenty-four hours a day and the Court finds his conduct, whether occurring at the Office or outside of it, is actionable under a Title VII or § 1983 action. *See Equal Emp't Opportunity Comm'n. v. The Rest. Co.*, 490 F. Supp. 2d 1039, 1048 (D. Minn 2007) (supervisor showing up to the plaintiff's home constituted part of the plaintiff's Title VII claim); *Moring v. Arkansas Dep't of Corr.*, 243 F.3d 452, 456-57 (8th Cir. 2001) (supervisor engaged in actionable sexual harassment under § 1983 where he came to the employee's hotel room at 10:15 p.m. during a business trip and proceeded to sexually harass her).

After arguing that much of the conduct in the record should not be considered by the Court, Anderson argues that the remaining conduct is not sufficiently severe or pervasive to survive summary judgment.

A cognizable hostile work environment claim must meet a high threshold. *See Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 933, 934 (8th Cir. 2002). However, the Court determines that a reasonable jury could find the conduct in the record created an actionable hostile work environment. Hutchison has alleged conduct sufficiently severe and pervasive "as to alter a term, condition, or privilege of Duncan's employment." *Id*. *See Brenneman v. Famous Dave's of Am., Inc.*, 507 F.3d 1139, 1143 (8th Cir. 2007) (affirming district court's denial of summary judgment where the supervisor began to harass employee beginning her first two weeks of employment and for the duration of her employment, with offensive touching and humiliating comments). *See also The Rest. Co.*, 490 F. Supp. 2d at 1047-48 (finding where supervisor stared at employee's body, made sexual

7

comments, asked to meet on weekends, showed up uninvited at employee's house, and touched employee inappropriately was sufficient to survive summary judgment).

Anderson also argues that Hutchison has been unable to produce any evidence that Anderson treated male employees differently; however, case law clearly holds that a plaintiff is not required to prove male and female employees were treated differently, but rather that the plaintiff was "discriminated against because of her sex." *See Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1040-41 (8th Cir. 2010).

Therefore, summary judgment is not appropriate with respect to Hutchison's § 1983 claim concerning a hostile work environment based on sexual harassment.

2. First Amendment Retaliation

The second claim under § 1983 is Retaliation based upon the First Amendment. The same test as a claim for retaliation under Title VII applies. *Hughes v. Stottlemyre*, 506 F.3d 675, 678-79 (8th Cir. 2007). Therefore, a plaintiff must show " '(1) the employee engaged in protected conduct; (2) reasonable employees would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct.' " *Recio v. Creighton Univ.*, 521 F.3d 934, 938-39 (8th Cir. 2008) (quoting *Brenneman*, 507 F.3d at 1146).

Anderson alleges Hutchison has set forth, for First Amendment retaliation, that Anderson fired Hutchison on December 1, 2005, because he mistakenly believed Hutchison was preparing evidence to file a sexual harassment claim. Anderson argues that because Hutchison admitted she was not preparing to file a lawsuit at the time she was fired, she was not engaged in any constitutionally protected activity and cannot assert a claim for First Amendment Retaliation.

The Court previously determined Hutchison pled a sufficient First Amendment Retaliation

8

claim while citing to authority recognizing that actions chilling speech and undertaken before a plaintiff engages in protected activity is no less retaliatory. *See* Order (Doc. 118) p. 13. For the same reasons, the Court will not enter summary judgment in favor of Anderson.

3. Malicious Prosecution

The final § 1983 claim that Anderson addresses is the claim for malicious prosecution, which centers on the civil lawsuit initiated by Anderson in 2006, the details of which are discussed under Hutchison's state law claim for malicious prosecution, below.

A claim for malicious prosecution is not independently cognizable under § 1983 because it is not a claim of constitutional injury. *Technical Ordinance, Inc. v. United States*, 244 F.3d 641, 650 (8th Cir. 2001). Hutchison argues her § 1983 malicious prosecution claim is based upon "rights secured for her by the United States Constitution and laws, including Title VII" and further argues the motivation for Anderson's civil lawsuit was to retaliate against her. *See* Hutchison Response (Doc. 207) p. 40. Anderson responds by arguing that Plaintiff did not sufficiently plead a Title VII retaliation claim.

In her Second Amended Complaint, Hutchison pleads that:

> The actions of Mike Anderson set forth in Count IV - Malicious Prosecution, were undertaken by him acting under color of state law, with malice, and without probable cause, and were for the purpose of denying Plaintiff equal protection and the Constitutional rights and rights guaranteed under federal law specified above, and his malicious prosecution is also actionable under 42 USC Section 1983."

Second Amended Complaint (Doc. 53) p. 24.

The "federal law specified above" that Hutchison refers to in her Complaint refers to her hostile work environment claim, her First Amendment Retaliation claim, and her right to be free from unreasonable searches and seizures (which was dismissed), under the same heading. Hutchison
9

has not plead a claim for retaliation under Title VII. Hutchison also failed to adequately plead an equal protection claim for malicious prosecution where she has not even alleged she was treated differently than others similarly situated. *See Creason v. City of Washington*, 435 F.3d 820, 823 (8th Cir. 2006). Moreover, a claim for malicious prosecution under Title VII concerning a hostile work environment would be inappropriate because Hutchison was no longer employed at the Office when Anderson filed his civil lawsuit. Finally, Hutchison has not argued her malicious prosecution claim concerns a violation of her First Amendment rights. Therefore, the Court will enter summary judgment in Anderson's favor on this issue because Hutchison has failed to show any constitutional or federal law claim that supports her § 1983 claim for malicious prosecution.

### **Defamation claim**

Next Anderson argues the Court should enter summary judgment in his favor on Hutchison's Defamation claim. The defamation claim centers on the civil lawsuit filed by Anderson in 2006 and a written statement Anderson released to the press on June 6, 2006. To state a claim for defamation, "the plaintiff 'must plead and prove the following elements: (1) publication, (2) of a defamatory statement, (3) that identifies the plaintiff, (4) that is false, (5) that is published with the requisite degree of fault, and (6) damages the plaintiff's reputation.' " *Topper v. Midwest Div., Inc.*, 306 S.W.3d 117, 127 (Mo. Ct. App. 2010) (quoting *Deckard v. O'Reilly Auto., Inc.*, 31 S.W.3d 6, 18 (Mo. Ct. App. 2000).

Anderson alleges the defamation claim is barred by the two year statute of limitations. *Jordan v. Greene*, 903 S.W.2d. 252, 254 (Mo. Ct. App. 1995). Hutchison argues the statute of limitations has not run because Anderson issued a statement published in a local newspaper on January 29, 2009. Hutchison also argues that the cause of action for a defamation claim accrues

only "when the damage resulting there from is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered." Mo. Rev. Stat. § 516.100. She thus argues that because she is still suffering continuing damage, the statute of limitations has not run.

However, the statute of limitations has clearly run on Hutchison's defamation claim. First, cases that have tolled the statute of limitations have done so when outside factors prevent the plaintiff from knowing that he or she has suffered a legal harm or has otherwise been damaged, such as when the defendant attempts to screen the plaintiff from learning of the publication. *See Jones v. Pinkerton's Inc.*, 700 S.W.2d 456, 460 (Mo. Ct. App. 1985); *Kennedy v. Microsurgery & Brain Research Inst.*, 18 S.W.3d 39, 43 (Mo. Ct. App. 2000). Anderson is not alleged to have undertaken any action to prevent Hutchison from learning of the statements he made. Second, the fact that Hutchison believes she is suffering continuing harm is irrelevant. Damages are ascertained "when the fact of damage appears, not when the extent or amount of damage is determined." *Kennedy*, 18 S.W.3d at 42. Furthermore, Anderson's statements published in the January 29, 2009 newspaper do not operate to toll or renew the statute of limitations. The statements made by Anderson in the January 29, 2009 newspaper article were made after Hutchison filed this lawsuit and thus, clearly the statute of limitations had expired on her defamation claim before she filed her complaint of defamation. The Court is not aware of any authority in Missouri holding that statements made after a suit is filed can renew or toll the otherwise expired statute of limitations. Therefore, the Court enters summary judgment in favor of Anderson on Hutchison's defamation claim.

**Intentional Infliction of Emotional Distress claim**

Anderson next challenges Hutchison's intentional infliction of emotional distress ("IIED")

claim.  To state a claim for IIED, the plaintiff must prove "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; and (3) the conduct caused severe emotional distress resulting in bodily harm." *Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309, 321 (Mo. Ct. App. 2010).  For conduct to be extreme and outrageous it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Polk v. Inroads/St. Louis, Inc.*, 951 S.W.2d 646, 648 (Mo. Ct. App. 1997) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).  Finally, the court determines, initially, whether the conduct at issue may reasonably be considered to meet the requisite standard.  *Id*.  The conduct that is alleged to constitute Hutchison's IIED claim is the incident that transpired on December 18, 2005.

IIED claims only lie where the conduct was " 'intended only to cause extreme emotional distress to the victim.' " *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997) (quoting *K.G. v. R.T.R.*, 918 S.W.2d 795, 799 (Mo. 1996).  When a defendant's conduct was not intended solely to cause extreme emotional distress, the plaintiff must recover under another tort and the statute of limitations for the other tort applies.  *K.G.*, 918 S.W.2d at 799.  The issue over whether Anderson intended solely to cause extreme emotional distress is a factual dispute for the jury to decide.  Hutchison argues that even if Anderson's intent when he first showed up to her house on December 18 was to engage in sexual conduct with her, after she did not answer the door or respond to his calls, his subsequent conduct demonstrates that he intended solely to cause her emotional distress.  Hutchison has alleged sufficient circumstantial evidence of intent on this issue to make a submissible case.

Lastly, Anderson challenges Hutchison's evidence concerning bodily harm because although Hutchison will submit expert testimony at trial, the expert reports attached to her response are

12

unsworn statements which constitute inadmissible hearsay. *See Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 728 (8th Cir. 2001). However, the Court does not find this argument meritorious. Hutchison has retained two experts who can provide sworn testimony at trial, and based on the evidence in the record and Anderson's argument on this issue, the Court finds summary judgment is not appropriate. The Court will determine at trial, once sworn testimony is entered, whether Hutchison has met her burden.

## **Malicious Prosecution Claim**

To establish a claim for malicious prosecution, Hutchison must show "(1) commencement of an earlier suit against plaintiff; (2) instigation of the suit by defendant; (3) termination of the suit in plaintiff's favor; (4) lack of probable cause for the suit; (5) malice by defendant in instituting the suit; and (6) damage to plaintiff resulting from the suit." *Edwards v. Gerstein*, 237 S.W.3d 580, 582 (Mo. 2007). The malicious prosecution claim concerns the 2006 civil lawsuit initiated by Anderson.

Anderson first alleges that Hutchison cannot assert a claim for malicious prosecution because she cannot show the civil lawsuit terminated in her favor. Anderson claims that the 2006 lawsuit was dismissed without prejudice pursuant to a "settlement agreement" reached between Anderson and Hutchison, as evidenced by the letter sent by Anderson's counsel to Hutchison's counsel. However, the letter only indicated Anderson was voluntarily dismissing the suit "and no further civil action will be taken until the EEOC complaint has been concluded." (July 7, 2006 Letter). Anderson also testified he was still considering refiling his suit. This Court previously held that Anderson abandoned the 2006 lawsuit. (Order Doc. 16 p. 8-9).

Anderson argues that regardless of the fact the lawsuit was abandoned, there is no evidence that the prior lawsuit terminated in Hutchison's favor. However, abandonment of a lawsuit is

13

considered to terminate in plaintiff's favor in regards to a malicious prosecution claim. *Arana v. Reed*, 793 S.W.2d 224, 226 (Mo. Ct. App. 1990).

Lastly, Anderson argues there is no evidence of malice by Anderson in initiating the lawsuit and there is no evidence that there was a lack of probable cause for the lawsuit. Only the "slightest of proof" of a lack of probable cause is necessary to state a *prima facia* case of malicious prosecution. *Fust v. Francois*, 913 S.W.2d 38, 44 (Mo. Ct. App. 1995). Factual disputes concerning probable cause are for the jury, but whether probable cause exists is a question of law. *Kelley v. Kelly Residential Group, Inc.*, 945 S.W.2d 544, 549 (Mo. Ct. App. 1997). Probable cause to initiate a civil suit " 'consists of a belief in the facts alleged, based on sufficient circumstances to reasonably induce such belief by a person of ordinary prudence in the same situation, plus a reasonable belief by such person that under such facts the claim may be valid under the applicable law.' " *Id.* (quoting *Haswell v. Liberty Mut. Ins. Co.*, 557 S.W.2d 628, 633 (Mo. 1977)).

The Court will not repeat all of the sordid details which were the purported subject of Anderson's complaint. Suffice it to say the surrounding circumstances and content of the complaint are highly irregular and present sufficient disputes as to material facts that Anderson's request for summary judgment will be denied.

## Abuse of Process Claim

The final claim subject to Anderson's Motion is for abuse of process. Hutchison's claim of abuse of process concerns the subpoena Anderson obtained to collect a copy of the voicemails he left Hutchison on December 18, 2005, and the civil lawsuit he initiated in 2006. A claim for abuse of process requires the plaintiff to show "(1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted or authorized by the process; (2) the defendant had

14

an illegal purpose in exercising such illegal, improper, perverted use of process; and (3) damage resulted." *Romeo v. Jones*, 86 S.W.3d 428, 433 (Mo. Ct. App. 2002). "The defendant must have some ulterior purpose and act willfully in the improper use of the process ... [and] the ulterior purpose may be inferred from the wrongful use made of the process, but the use itself may not be inferred from the motive." *Id*.

Anderson argues, with respect to the subpoena, he requested a copy of the voicemails he left Hutchison on December 18 because he thought he may have been drugged and wanted to have a doctor listen to the voicemails to determine whether Anderson was drugged or intoxicated. He further states that under Mo. Rev. Stat. § 56.085, a prosecuting attorney may request a subpoena in the course of a criminal investigation.

Hutchison claims there is a significant issue of fact regarding whether Anderson was actually engaged in the course of a criminal investigation. Specifically, Anderson testified that no criminal file was opened, he did not assign a special prosecutor to handle the alleged crime committed against him although he was the victim, and in fact, Anderson did not have anyone listen to the tape after it was turned over.

The Court is also mindful of Hutchison's testimony that before Anderson had the subpoena issued, he told her he wanted the tape recording of the voicemails destroyed. Again, this constitutes highly irregular procedure as is also the case regarding the 2006 lawsuit. The jury if it chooses to believe Hutchison and disbelieve Anderson could very well find the requisite intent to support an abuse of process claim.

Anderson also alleges that there is no evidence of damages in the record to support Hutchison's abuse of process claim. However, Hutchison testified that she resigned because of

15

Anderson's harassing behavior, including Anderson's attempt to collect the tape Hutchison made of the voicemails Anderson left her. Hutchison also testified about the impact Anderson's civil lawsuit had with the community. The Court also notes Hutchison intends to submit sworn expert testimony on the issue of damages. *See Sanders Pete & Sons Garage, Inc.*, 769 S.W.2d 844, 845 (Mo. Ct. App. 1989) (finding sufficient evidence of damages where the plaintiff "testified that because of the suit she had to take time to appear in court and discuss the case; that the lawsuit made her nervous and caused her to have an upset stomach and lack of sleep"). Anderson's Motion for Summary Judgment will be denied on this issue.

Finally, Anderson argues he is entitled to absolute immunity and qualified immunity concerning the issuance of the subpoena. The doctrines of qualified and absolute immunity were applied by the United States Supreme Court to shield government officials from liability in § 1983 and *Bivens* actions, and the Court relied upon common law doctrines of immunity shielding public officials from liability. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999); 15 Am. Jur. 2d *Civil Rights* § 104; *Edwards v. Gerstein*, 237 S.W.3d 580, 587 (Mo. 2007) (Stith, J., concurring and dissenting in part) (recognizing United States Supreme Court opinions on absolute and qualified immunity are not constitutional law decisions and are therefore not binding on a state court). The Missouri Court of Appeals has recognized absolute immunity is afforded to prosecutors and is applicable when an official acts within the scope of his or her duties. *Carden v. George*, 291 S.W.3d 852, 854 (Mo. Ct. App. 2009). The Court could find no Missouri case law recognizing a prosecutor is entitled to qualified immunity if absolute immunity is not applicable. However, the doctrine of qualified immunity set forth by the United States Supreme Court only applies when an official is acting within the scope of his or her duties. There is a genuine issue of material fact concerning whether

16

Anderson was acting within the scope of his duties as County Prosecutor. Therefore, Anderson's Motion for Summary Judgment will be denied on the issues of absolute and qualified immunity.

## CONCLUSION

For the reasons specified above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Anderson's Motion for Summary Judgment. The Court enters summary judgment in Anderson's favor on Count VI for Defamation in its entirety and Count IX to the extent Hutchison seeks to assert a claim for malicious prosecution. Defendant Anderson's Motion for Summary Judgment is denied for Counts IV (Malicious Prosecution), V (Abuse of process concerning the subpoena and civil lawsuit), VIII (IIED concerning the incident on December 18, 2005), and Count IX (§ 1983 claims concerning hostile work environment based on sexual harassment and First Amendment retaliation).

**IT IS SO ORDERED**.

DATED: December 1, 2010           */s/ Richard E. Dorr*
                                  RICHARD E. DORR, JUDGE
                                  UNITED STATES DISTRICT COURT